UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| ROXANA LISETH TORRES AYALA,<br><br>                    Petitioner,<br><br>          v.<br><br>FERETI SEMAIA, Warden, Adelanto ICE Processing Center, et al.,<br><br>                    Respondents. | Case No. 5:26-cv-04182-DTB<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

**I.**

**PROCEDURAL HISTORY**

On July 26, 2026, petitioner Roxana Liseth Torres Ayala ("Petitioner"), through counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") (Docket No. 1 at 1-29), [1] accompanied by eleven exhibits (Docket Nos. 1-1 through 1-11).

/ / /

/ / /

---

[1]     For the parties' pleadings, the Court cites to the CM/ECF pagination at the top of each page.

1

On August 4, 2026 (pursuant to General Order 26-05's expedited briefing schedule, see Docket No. 4), Respondents filed an Answer to the Petition ("Answer")(Docket No. 9), accompanied by four exhibits (Docket Nos. 9-1 through 9-4).

On August 7, 2026, Petitioner filed a Reply.  (Docket No. 10).

Thus, this matter is now ready for decision.  For the reasons set forth below, the Petition is granted.

## II.

## BACKGROUND

Petitioner is 32 years-old and alleged to be citizen of El Salvador.  (Petition at ¶ 41).  As alleged in the Petition, in approximately February 2024, Petitioner presented herself to immigration authorities at the international border in Texas and tried to seek asylum.  (Id. at ¶ 42).  As alleged in the Answer, on February 21, 2024 and again on May 5, 2024, Petitioner entered the United States without inspection.. (Answer at 2).  However, on February 28, 2024, Petitioner was removed before she could submit an application for relief.  (Petition at ¶ 42; Answer at 2).  Petitioner was photographed and fingerprinted and was provided a Form I-296, which specifically advised Petitioner:  "[Y]ou are prohibited from entering, attempting to enter, or being in the United States for a period of 5 years from the date of your departure from the United States as a consequence of your having been found inadmissible as an arriving alien in proceedings under section 235(b)(1) or 240 of the [Immigration and Nationality] Act."  (Answer at 3).

On May 5, 2024, Petitioner re-entered the United States, without inspection. (Petition at ¶ 43; Answer at 3).  Following that re-entry without inspection,, Immigration authorities encountered her and, because she re-entered the United States illegally after removal, she was processed as a reinstatement of removal in

2

compliance with the requirements for reinstating removal orders under 8 C.F.R. § 241.82. (Answer at 3; see Docket No. 9-3 [Reinstatement of Removal Documents]). On May 6, 2024, Petitioner was served with I-220B - Order of Supervision and released from custody into the United States. (Answer at 3; see Docket No. 9-1 [Record of Deportable/Inadmissible Alien]).

Petitioner alleges that immigration officials issued her a Form I-871 Notice of Intent/Decision to Reinstate Prior Order of removal, released her into the United States and placed her under an Order of Supervision ("OSUP") with enrollment in an Alternatives to Detention ("ATD") program with GPS monitoring. (Petition at ¶ 43). On April 8, 2025, Petitioner filed a Form I-589-Application for Asylum and for Withholding of Removal with USCIS for herself and her minor daughter. (Petition at ¶ 44; Answer at 3).

Since her release by the government on an OSUP, she has enrolled in ATD and has resided in the United States for over two years. She has attended her check-in appointments with United States Immigration and Customs Enforcement ("ICE") and Intensive Supervision Appearance Program ("ISAP"), maintained consistent employment with a work permit, and built a life with her child and partner. (Petition at ¶ 44). On or about July 9, 2026, Petitioner reported to the ISAP office as requested. (Id. at ¶ 45). Once there, Respondents arrested and detained Petitioner. (Id.). She alleges that she was not provided any pre-deprivation notice or hearing before a neutral adjudication. (Id.). Petitioner was served with a Notice of Revocation of Release and interviewed for any possible impediments to her detention and removal. (Answer at 4).

Petitioner is being detained at the ICE Processing Center in Adelanto, California. (Petition at ¶ 45; see https://locator.ice.gov/odls/#/results).

///

3

## III.

## PETITIONER'S CLAIMS

The Petition raises four claims for habeas relief: (1) Petitioner's detention is in violation of 8 U.S.C. § 1231(a)(6), thereby violating Petitioner's right to due process; (2) Respondents failed to follow its own regulations regarding the revocation of Petitioner's release, in violation of 8 C.F.R. §§ 241.13(i)(2) and Petitioner's right to due process; (3) Respondents failed to follow its own regulations regarding the revocation of Petitioner's release, in violation of 8 C.F.R. § 241.4(l) and Petitioner's right to due process; (4) Petitioner's removal to a third country violates Petitioner's right to due process; and (5) Petitioner's detention violates the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), (B) . (Petition at 18-25).

## IV.

## LEGAL AUTHORITY

A writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A noncitizen in the custody of immigration authorities may bring a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on the grounds of their detention violates the Constitution or other federal laws. 28 U.S.C. § 2241(c)(3); Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001)

4

(federal courts retain jurisdiction to consider habeas relief under Section 2241 for noncitizens subject to detention following an order of removal).

Here, Petitioner has raised claims under the Due Process Clause of the Fifth Amendment, which prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. These protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.") (internal quotation marks omitted); Zadvydas, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings.") (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process.") (internal quotation marks omitted). To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (applying Mathews to due process challenge to immigration detention, and noting that "Mathews remains a flexible test that can and

must account for the heightened governmental interest in the immigration detention context"); López v. Wofford, Case No. 1:25-cv-01226-KES-SKO (HC), 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) (collecting cases extending Mathews "to the context of immigration detention"). Under Matthews, courts weigh the following three factors: (1) "[T]he private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

## V.

## DISCUSSION

**A.** **Petitioner's Third Claim Warrants Habeas Relief.**

As noted, in the third claim alleged in the Petition, Petitioner contends that the revocation of her release on supervision violated 8 C.F.R. § 241.4(l) and her right to due process under the Fifth Amendment. (Petition at 20-21).

1. <u>Relevant Legal Authority</u>.

ICE may revoke release when a noncitizen violates a condition of his or her OSUP. 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(1). When ICE revokes an OSUP, ICE is required to provide (1) notice of the reasons for revocation, and (2) an "informal interview promptly after his or return to [ICE] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3). ICE also may revoke release when, "on account of changed

circumstances, [ICE] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future."　8 C.F.R. § 241.13(i)(2).

"It is a well-known maxim that agencies must comply with their own regulations." United States v. Ramos, 623 F.3d 672, 683 (9th Cir. 2010); see also Delkash v. Noem, Case No. 5:25-cv-01675-HDV-AGR, 2025 WL 2683988, at *5 (C.D. Cal. Aug. 28, 2025) ("It is well-established that government agencies are required to follow their own regulations.") (citing United States ex rel Accardi v. Shaughnessy, 347 U.S. 260, 268 (1954)).　"Numerous district courts, including courts in the Ninth Circuit, 'have determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered.'"　Gutierrez v. Noem, Case No. 5:25-cv-02668-DOC-RAO, 2025 WL 3247769, at *4 (C.D. Cal. Oct. 31, 2025) (citation omitted); see also Delkash, 2025 WL 2683988, at *5 ("A growing number of courts have unequivocally found that the government's failure to follow its release revocation procedures—in particular the failure to give a detainee the required notice and interview—renders the redetention unlawful. . . .　These procedures are not optional or discretionary; they must be followed, and failure to do so renders the detention unlawful.") (internal citations omitted).

2　Analysis.

Petitioner alleges that when she was taken into ICE custody, she was not provided any reasons for the revocation of her OSUP, she was not provided an opportunity to respond to the reasons for the revocation of her OSUP, and she was not given a prompt informal interview.　(Petition at ¶¶ 45, 53, 64, 85).

Indeed, as Petitioner asserts (see Petition at ¶ 45), Respondents detained her while she complied with the terms of release in the United States.

Moreover, as Petitioner contends (see Petition at ¶ 83), it does not appear that Rogelio Gudino, the immigration official who signed the Notice of Revocation of Release (see Docket No. 9-4 at 2), had the regulatory authority to revoke Petitioner's release.  See 8 C.F.R. § 241.4(l)(2) (giving such authority to the Executive Associate Commissioner and the district director); Ceesay v. Kurzdorfer, 781 F. Supp. 3d 137, 159-61 (W.D. N.Y. May 2, 2025) (finding that "there is no delegation order clearly giving [the assistant] field officer] the authority to revoke release, and even if there were, there is no caselaw supporting the validity of such a delegation order"); Cruz v. Rios, Case No. 26-01374-MWF-DSR, 2026 WL 973367, at *3 (C.D. Cal. Apr. 8, 2026) ("[T]o the extent that § 241.4 provides the grounds for the revocation of [the petitioner's] OSUP . . ., there is no evidence that the revocation decision was made by an official vested with the requisite authority.").  In the Answer, Respondents do not attempt to argue that Assistant Field Office Director Gudino had the authority to revoke Petitioner's release.  (See Docket No. 9).

Therefore, the Court finds that the Petition should be granted with respect to Petitioner's claim that ICE violated federal law and Petitioner's right to procedural due process.[2]

**VI.**

**ORDER**

IT THEREFORE IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Respondents to immediately release Petitioner Roxana Liseth Torres Ayala (A# 240-546-471) from custody, subject to the terms of her OSUP, and the return of all property confiscated from her during her arrest and processing into detention; (3) enjoining Respondents and their

---

[2]   The Court's determination that Petitioner is entitled to habeas relief on the third claim alleged in the Petition renders it unnecessary for the Court to address the other claims alleged in the Petition.

officers, agents, employees, attorneys and persons acting on their behalf in concert or in participation with them, from:  (i) Re-detaining Petitioner without complying with all applicable statutes and regulations, including, without limitation, providing notice and an individualized pre-detention hearing before a neutral arbiter at which it is determined that detention is lawful and warranted under the applicable statutes and regulations either because Petitioner has violated a term of her OSUP or because her removal from the United States is significantly likely in the reasonably foreseeable future, including that Respondents have procured travel documents for Petitioner and that such documents are in the possession of ICE; and (ii) removing Petitioner to any country without appropriate notice and an opportunity to be heard in accordance with any applicable ICE regulations, including the opportunity to assert a fear-based objection; and (4) Respondents shall file a status report within two (2) business days to confirm that Petitioner has been released from custody pursuant to this Order.

DATED: August 14, 2026

_____
DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE

9